IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A SEARCH WARRANT FOR THE )     r 12 4729 PWG
PREMISES AT 3419 PARK HEIGHTS AVE )
BALTIMORE, MARYLAND )

## AFFIDAVIT

I, Mark Gray, being duly sworn, state:

1.      I am a Special Agent employed by the Social Security Administration, Office of

the Inspector General, Office of Investigations (SSA/OIG/OI).  I am assigned to the Baltimore,

Maryland Field Office.  My duties include, but are not limited to, investigating fraud waste and

abuse against the Social Security Administration and its programs.

### Introduction and Experience

2.      The facts and information contained in this affidavit are based upon my training

and experience, participation in investigations, personal knowledge, and observations during the

course of this investigation, as well as the observations of other agents involved in this

investigation.  All observations not personally made by me were relayed to me by the individuals

who made them or are based on my review of records, documents, and other physical evidence

obtained during the course of this investigation.  This affidavit contains information necessary to

support probable cause.  It is not intended to include each and every fact and matter observed by

me or known to the United States.

3.      Based on your affiant's training, knowledge, experience, and participation in

other investigations involving Social Security Number fraud, identity theft, and other fraudulent

activities, as well as discussions with other law enforcement officers, your affiant knows that



1

12 4729 PWG

those involved in identity theft maintain records, receipts, notes, ledgers, money orders, bills, identity documents, correspondence, and other papers relating to identity theft. Your affiant knows that such records, receipts, notes, identity documents, etc., are maintained within their residences where they have ready access to them.

4.    Your affiant knows that those involved in identity theft schemes and/or other similar fraudulent activities maintain the records of fraudulent transactions as conventional business records, and as such, these records are maintained over an extended period of time, including time periods long after any particular transaction is completed.

5.    Your affiant knows that those involved in identity theft commonly maintain addresses or telephone numbers in books or papers that reflect their true identity, other identities they have assumed in the past, as well as the names, addresses and/or telephone numbers of associates who have participated in their fraudulent activities.

6.    Your affiant knows that those involved in identity theft commonly maintain at their residence electronic documents and correspondence, including e-mails, instant messages, and text messages, on desktop computers, laptop computers, tablet computers, cellular phones, and other electronic devices, which electronic media reflect their true identity, other identities they have assumed in the past, as well as the names, addresses and/or telephone numbers of associates who have participated in their fraudulent activities.

<u>Factual Background</u>

7.    This affidavit is submitted in support of a warrant to search 3419 Park Heights Avenue, Baltimore, Maryland (SUBJECT PREMISES). The SUBJECT PREMISES is more particularly described in Attachment A. The items to be seized are described in Attachment B.

2

12 4729 PWG

8.     As provided below, there is probable cause to believe that within the SUBJECT PREMISES, there exists evidence, fruits, and instrumentalities of the crimes of Identity Theft, Title 18 United States Code Section 1028A and Social Security Number Fraud, Title 42 United States Code Section 408(a)(7)(B)

9.     On April 22, 2008, Louise EARLY applied for a Maryland ID card at the Maryland Motor Vehicle Administration (MVA) Main Office in Glen Burnie, Maryland. EARLY provided the name S.L.S., date of birth 03/xx/1979, and Social Security Number (SSN) xxx-xx-7786 as her identifiers.  According to the application on file with the MVA, EARLY presented first class mail, a residential rental contract, a Social Security Card, and a birth certificate (or certified copy), all in the name of S.L.S., as proof of her identity.  EARLY was issued a Maryland ID card (S-530-758-549-169) on the same date in the name S.L.S.  On July 23, 2012, EARLY was issued a replacement Maryland ID card with the same identifiers and same card number.  The replacement ID card listed the SUBJECT PREMISES as EARLY's address.

10.     On June 3, 2008, EARLY applied by mail for enrollment with the U.S. Career Institute, a distance learning provider in Fort Collins, Colorado, in the name S.L.S.  EARLY provided the name S.L.S. and the SSN xxx-xx-7786 on the handwritten application.  The form is signed in the name S.L.S. and dated June 3, 2008.  EARLY was accepted into the distance learning course, which offered training in massage therapy, and was provided a loan by U.S. Career Institute to cover a portion of the tuition.  EARLY later defaulted on this loan.

11.     Law enforcement officers, including detectives in Boise, Idaho and Baltimore, Maryland, have spoken to S.L.M., a woman living in Boise, Idaho.  S.L.M. has confirmed that S.L.S. is her maiden name, which she no longer uses.  She has further confirmed that her date of

3

**12 4729 PWG**

birth is 03/xx/1979, and that her SSN is xxx-xx-7786 (the same SSN used by EARLY). She has further confirmed to investigators that she did not complete the above-referenced application and has never enrolled with the U.S. Career Institute. She has further confirmed that she has never given anyone else permission to use her name or SSN, and that she currently resides in Boise, Idaho.

12. On July 3, 2008, EARLY applied for employment with Robert M. Cohl, a chiropractic practice located in Glen Burnie, Maryland. EARLY was hired and was briefly employed by Dr. Cohl's practice. EARLY completed a Maryland New Hire Registry Reporting Form and a W-4, Employee's Withholding Allowance Certificate when she began work. EARLY provided the name S.L.S, date of birth 03/xx/1979, and the SSN xxx-xx-7786 on the state Reporting Form and the W-4. Both are dated July 31, 2008 and are completed in EARLY's handwriting.

13. On December 9, 2009, EARLY applied for service with the Baltimore Gas and Electric Company (BG&E) at the SUBJECT PREMISES. EARLY provided the name S.L.S, date of birth 03/xx/1979, and the SSN xxx-xx-7786 to BG&E at the time she initiated service. As of November 14, 2012, BG&E confirmed that EARLY receives service in the name S.L.S. at the SUBJECT PREMISES. EARLY last submitted payment to PG&E for service at the SUBJECT PREMISES on October 19, 2012.

14. On May 14, 2010, EARLY was arrested by Baltimore City Police in Baltimore, Maryland. EARLY was charged with Driving on a Suspended License and Privilege, Driving Without a License, Failure to Display Registration Card Upon Demand, and Stopping a Vehicle Where Prohibited by an Official Sign. EARLY provided the name S.L.S., date of birth

4

03/xx/1979, and the SSN xxx-xx-7786 to law enforcement when she was booked for those offenses.

15.     On July 31, 2012, a Baltimore City Police Detective and your affiant performed a "knock and talk" at the SUBJECT PREMISES.  EARLY answered the door and asked us to come inside to speak.  Upon request for identification, EARLY identified herself as S.L.S., and provided us with a Maryland ID card, S-530-758-549-169, that she retrieved from her purse next to the dining room table.  The Maryland ID card listed her date of birth as 03/xx/1979. EARLY also provided her SSN as xxx-xx-7786 when asked.

16.     On November 6, 2012, I reviewed the numident record for SSN xxx-xx-7786 in the Social Security Administration Database.  The SSN ending 7786 comes back to a woman by the name of S.L.S, date of birth 03/xx/1979, and who was born in Oregon.  The record shows a recent change to S.L.S's last name because of marriage (which change was done in person at a Social Security Administration field office in Idaho), and shows an updated name of S.L.M.

17.     EARLY is the current owner of the SUBJECT PREMISES, which she purchased for $29,900 on December 16, 2009, according to records your affiant obtained from Baltimore City.

r 12 4729 PWG

## Conclusion

18.    Based upon the above information, I respectfully submit there is probable cause to
search the SUBJECT PREMISES, more particularly described in Attachment A, for the items to
be seized, as described in Attachment B.

Special Agent Mark Gray
SSA/OIG/OI, Baltimore Office


Sworn to and subscribed to before me
this ___ day of November, 2012


United States Magistrate Judge
Baltimore, Maryland

6

P 12 4729PWG

## ATTACHMENT A

Property To Be Searched

3419 Park Heights Avenue, Baltimore, Maryland is an attached "row home" style residence. The home has two visible stories and a dark grey shingled roof with a small window trimmed in white facing the road. The first story has a purple brick exterior and two windows trimmed in white. The second story is also purple brick with three windows trimmed in white. The home has the numbers "3419" in black lettering on a white background at the top of the right hand rail on the front steps. The front door is white, with a gold-colored mail slot to the right of the door handle.



6.      Records reflecting indicia of occupancy, residency and/or ownership of the premises, including but not limited to utility and telephone bills, mortgage, deed, lien records, U.S. Mail, including Express Mail, and other types of courier services.

7.      Evidence of appliances, devices, furniture, equipment, property, items generally, and services that represent purchases using credit cards obtained by fraud and/or proceeds of other forms of fraud or financial crimes and items that related to or constitute evidence, fruits, or instrumentalities of violations of 18 USC §1028A.

8.      Credit cards, credit card account numbers, payment records and/or account numbers of any kind including electronic terminal receipts for credit cards, credit card and credit account statements and receipts.

9.      Electronic equipment, such as telex machines, facsimile machines, cellular telephones, telephone answering machines and related manuals used to generate, transfer, record, and/or store computer-read or generated information, which can be used to store evidence of, or facilitate the commission of, identity theft and/or Social Security Number misuse. Additionally computer software, tapes, disks, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment.

10.      Electronic devices and information and data which is stored on electronic devices capable of analyzing, creating, displaying, converting, receiving, or transmitting electronic and/or magnetic computer impulses or data, which can be used to store evidence of, or facilitate the commission of, identity theft and/or fraud-related offenses. These devices include, but are not limited to, computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, optical scanners, encryption circuit boards, hard

*[handwritten]* Max: Any items described in paragraphs 9, and 10 and 11 above, and below, may be seized only but may not be searched without an additional search warrant issued based upon a further showing of probable cause. *[signature]* USMJ 11/29/12

drives, and other computer related electronic devices. Other such items which include instructions or programs which allow users the ability to operate such systems.

11.      Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, monitors, and or televisions, flatbed scanners, and data where instrumentalities of and will contain evidence related to this crime. The following definitions apply to the terms as set out in this affidavit and attachment:

a.      Computer hardware: Computer hardware consists of all equipment, which can receive, capture, collect analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or date. Hardware includes any date-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, and related communications devices such as cables and connections), as well as any devices mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

b.      Computer Software: Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

*See handwritten language on page 9 above.*

10

12  4729 PWG

c.      Documentation: Computer-related documentation consists of written, recorded, printed, or electronically stored material, which explains or illustrates how to configure or use computer hardware, software, or other related items.

d.      Passwords and Data Security Devices: Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software or other programming code.  A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touches.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected date to make it inaccessible or unusable, as well as reverse the progress to restore it.

12.     The computers may be searched for the following items:

a.      Any and all notes, documents, records, or correspondence pertaining to fraud or identity theft.

b.      Any and all correspondence identifying persons transmitting, receiving or possessing, through interstate commerce including by U.S. Mails or by computer, any personal data identifiers.

c.      Any and all records, documents, invoices and materials that concern any accounts with any Internet Service Providers and financial or lending institutions.

d.      Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission,

N/A
No
Computer
search
is
authorized
at this
time.

MW-USM
MW-11/29/12

11

through interstate commerce including by United States Mails or by computer, any personal data identifiers, identification documents, and/or bank and credit card accounts.

    e.     Any and all documents, records, or correspondence pertaining to occupancy at 3419 Park Heights Avenue, Baltimore, Maryland

13.    Any of the items described in paragraphs 1 through 12 above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including floppy diskettes, fixed hard disks, or removable hard disk cartridges, software or memory in any form.  The search procedure of the electronic data contained in computer operating software or memory devices shall include the following techniques which shall be used to minimize the risk that those conducting the search will view information not within the scope of the warrant:

    a.     surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

    b.     "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.     "scanning" storage areas to discover and possible recover recently deleted files;

    d.     "scanning" storage areas for deliberately hidden files; or

    e.     performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

14.    If after performing these procedures, the directories, files or storage areas do not reveal evidence of identity theft or social security number misuse or constitute evidence, fruits, or

12 4729 PWG

instrumentalities of violations of 18 USC § 1028A or 42 USC § 408(a)(7)(B), the further search

of that particular directory, file or storage area, shall cease.

r 12 4729 PWG

## ATTACHMENT B

Particular Things To Be Seized

Any and all evidence, fruits, and instrumentalities of Social Security Number Fraud, Title 42 United States Code Section 408(a)(7)(B) and Aggravated Identity Theft, Title 18 United States Code 1028A, to include the following:

1.      Any and all written correspondence, notes, lists, records, documents, or information that may pertain to S.L.S. and/or the SSN xxx-xx-7786, as well as any other names or SSN's that appear to be fraudulent.

2.      Written correspondence, photographs, audio or video recordings, notes, lists, records, identification documents, passports, invoices, receipts, mail or other documents that indicate the true identity or country of origin of EARLY.

3.      U.S. Mail directed to names other than EARLY, or other parties not residing at 3419 Park Heights Avenue, Baltimore, Maryland.

4.      Books, records, receipts, bank statements, and bank records, ATM/Debit cards, money drafts, letters of credit, wire transfers, money orders, and cashier check, passbooks, bank checks, and any other items evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money.

5.      Social Security Administration documents, including Numidents, Alfadents, Social Security Number cards and/or applications for Social Security Number cards, papers with social security numbers, credit reports, credit profiles, photographs, fraudulent identification and identification making equipment.

8